# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) No. 06 CR 896 |
| | ) |
| JOSE GAYA, | ) Wayne R. Andersen |
| | ) District Judge |
|     Defendant. | ) |

## MEMORANDUM, OPINION AND ORDER

This case is before the Court on the motion of defendant Jose Gaya for judgment of acquittal or for a new trial. For the following reasons, the motion is denied.

## BACKGROUND

After a multi-week jury trial, defendant was found guilty of (i) conspiracy to possess with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846 (Count One); (ii) possession with intent to distribute 500 grams or more of cocaine (Counts Two, Five); (iii) use of a telephone in furtherance of drug trafficking (Count Three); and (iv) distribution of cocaine (Count Six).

During that trial, the jury heard overwhelming evidence of defendant's guilt. What became clear at trial was that defendant Rosales regularly supplied wholesale quantities of cocaine to defendant Gaya at locations in Summit, Illinois, often times on credit, without requiring Gaya to provide payment immediately. The evidence revealed that Gaya was a member of the Latin Kings street gang who distributed large quantities of cocaine to Latin Kings and others in the Chicago and Summit area. Gaya received cocaine from Rosales, and, at times, also

from Danny Aguilar (a fellow Latin King), Jesse Guajardo (a fellow Latin King), and Anthony Compean (a fellow Latin King). Gaya also provided cocaine to Guajardo at times when Guajardo did not have any cocaine available.

In the government's case-in-chief, Gaya was captured on tape in many different ways-- through Title III wiretaps, through recorded telephone calls, and through recorded face-to-face meetings. His own words captured on tape provided evidence of defendant's drug trafficking. In addition, one of Gaya's close gang and drug associates testified against him and provided background into Gaya's drug-dealing.

Gaya also testified at trial. He testified about his relationship with Rosales, his relationship with Zyneida Rodriguez, and his drug trafficking. He claimed to be a marijuana dealer, primarily, and not a significant cocaine trafficker.

## **DISCUSSION**

Defendant raises three arguments in his motion for acquittal or for a new trial. First, he claims that the Court abused its discretion when it denied defendant's motion for substitution of counsel on the day of trial. Second, he argues that the verdict on Count One was improper based upon "impossibility." Third, he asserts that the evidence on Count One failed to establish a conspiratorial relationship between defendant and Rosales. We will address each argument in turn.

### **I. Defendant's Motion For New Counsel Made On The Day Of Trial**

Defendant first argues that the Court abused its discretion when it denied his motion for substitution of counsel made on the day of trial. On April 30, 2008, defendant's trial started with the voir dire process and the selection of jurors. Defendant raised no objections to his counsel at

any point that day.  On May 6, 2008, right before the jury was to be sworn and the opening arguments were to commence, defendant advised the Court for the first time that he wanted to switch lawyers.  After much colloquy between the Court and defendant, the Court inquired of defendant's reason for wanting to switch lawyers.  Defendant responded that he thought that his lawyer, Mr. Clark, was ineffective because he was not adequately preparing defendant for trial.  The Court then allowed time for a private consultation between defendant and his lawyer.

After that, the Court then gave defendant his options and gave him a chance to think things over.  Defendant made his choice right then, opting to withdraw his motion, saying "[y]eah, it is fine, your honor.  I will just go with what you say.  I will go with Clark."  The Court then invited defendant at the end of the day to continue to raise whatever concerns he had with Mr. Clark, but defendant never again during trial asked for new counsel or requested to proceed alone.

The Seventh Circuit has made clear that "[i]f the defendant has been given an opportunity to explain to the court the reasons behind his request for substitute counsel, we review the denial of that request only for an abuse of discretion."  *United States v. Harris*, 394 F.3d 543, 551 (7th Cir. 2005) (citing cases). As the transcript of these proceedings made clear, this Court did solicit the reasons for defendant's dissatisfaction with Mr. Clark. Indeed, the Court's inquiry was more developed than that which the Seventh Circuit found sufficient in *Harris*.

In determining whether the Court abused its discretion in denying a motion for substitute counsel, a number of factors are considered: "the timeliness of the motion, the adequacy of the court's inquiry into the motion, and whether the conflict was so great that it resulted in a total lack of communication preventing an adequate defense." *Harris*, 394 F.3d at 552 (citing *United*

*States v. Bjorkman,* 270 F.3d 482, 500 (7th Cir. 2001); *United States v. Brown*, 79 F.3d 1499, 1505-06 (7th Cir. 1996); *United States v. Zillges*, 978 F.2d 369, 372 (7th Cir. 1992)). Even if there were an abuse of discretion, the defendant must also establish that he was deprived of his Sixth Amendment right to effective assistance of counsel. Defendant can not meet either test here.

      As in *Harris*, defendant's timeliness claim here could not be weaker. Defendant, who was on his second court appointed lawyer, raised this issue for the first time after the jury had been selected and as the parties were preparing for opening arguments. Such delay is clearly untimely. *Harris*, 394 F.3d at 552-53 (concluding that motion for new counsel raised on day of trial was untimely); *United States v. Wilks*, 46 F.3d 640, 643 (7th Cir. 1995) (motion for new counsel untimely when not raised prior to commencement of second trial); *United States v. Huston*, 280 F.3d 1164, 1167 (7th Cir. 2002) (affirming district court's denial of motion for new counsel when defendant conceded that motion was untimely when made on morning of trial).

      In terms of the inquiry made, the Court explicitly asked defendant why he wanted a new lawyer. As in *Harris*, the Court here "elicited from [defendant] all the major reasons he sought new counsel." *Harris*, 394 F.3d at 553. Defendant elicited two main reasons - that Mr. Clark encouraged him to plead guilty and cooperate (a wholly legitimate recommendation given the absolutely overwhelming evidence against the defendant) and Mr. Clark sought information from defendant about the main witness against him. Both avenues of communication seem appropriate for a defense lawyer - pursue a possible plea if, as in this matter, the case is problematic; and, if the defendant continues to seek a trial, find out as much information as possible about the star witness against the defendant.

As to the third factor - whether the conflict was so great that it resulted in a total lack of communication - the record is clear that the defendant and his lawyer did communicate. Indeed, after defendant's initial request, defendant and Mr. Clark visited for at least five to ten minutes, according to the record. Moreover, for a trial that stretched two weeks, defendant and his lawyer by all accounts appeared to communicate throughout.

Defendant cites to *United States v. Zillges*, 978 F.2d 369 (7th Cir. 1992), in support of his claim. But, in *Zillges*, the timing of defendant's objection in *Zillges* was significantly different than this case. The defendant in *Zillges* raised issues with his defense lawyer through a letter received by the court a full month before trial. In this case, defendant first raised issues with his defense lawyer after the jury was selected but not yet sworn in. For that reason alone, the cases are distinguishable. Indeed, this case is more akin to *Harris*, in which the district court inquired of the defendant about his lawyer but also made clear - as did this Court - "we're going to trial today." *Harris*, 394 F.3d at 549.

Of course, even if this Court were to conclude that it had abused its discretion in its handling of defendant's tardy motion for new counsel, defendant has not and cannot show that he was deprived of his Sixth Amendment right to effective assistance of counsel. *Zillges*, 978 F.2d at 372-73 (affirming conviction); *Harris*, 394 F.3d at 554 (affirming conviction). In order to succeed on a claim of attorney ineffectiveness, a defendant must demonstrate both that his counsel's conduct fell below an objective standard of reasonableness and that his counsel's substandard performance prejudiced him. *Hampton v. Leibach*, 347 F.3d 219, 246 (7th Cir. 2003) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). Defendant has failed to make either showing here.

In terms of counsel Clark's performance at trial, this Court's scrutiny "must be highly deferential, allowing ample room for differences of professional opinion among attorneys as to how one might best represent the defendant." *Harris*, 394 F.3d at 555. The prejudice prong is met only if the defendant can show that "but for counsel's unprofessional errors, there is a reasonable probability that the result of the proceeding would have been different." Id.

Defendant has offered no evidence to suggest that his counsel was unprofessional, ineffective, or committed errors at trial - much less that the results of the proceeding would have been different. Instead, in the most conclusory fashion, defendant points only to the following as his counsel's defects:

> When trial counsel chose to advocate on Jose Gaya's behalf, he was repeatedly argumentative with witnesses, and overly repetitive to the point of abrasion.... More than that, though, there were several instances where trial counsel barely engaged in cross examination. What little examination he conducted consisted of arguing with witnesses and hurling accusations at them. His tone with witnesses received not one, but several, reprimands from the Court. Rather than having an effective advocate in his corner, Jose Gaya was stuck with unwanted and seemingly unprepared counsel.

Gaya Motion for New Trial, p. 5. The defendant points to nothing specific that counsel did wrong, no witness that his counsel should have called but did not, no line of cross-examination that counsel did not follow, no investigative lead that counsel failed to pursue. Instead, he vaguely claims that his counsel was too aggressive in cross-examination. Such non-detailed allegations are insufficient to find ineffectiveness. Rather, as in *Zillges*, the proceedings contradict defendant's claims that he did not receive effective assistance of counsel. The record reveals that defendant himself testified at trial, counsel engaged in aggressive cross-examination, and made coherent arguments on behalf of defendant. Thus, just as in *Zillges*, there can be

finding that defense counsel was ineffective.

Finally, it must be said that the evidence against defendant was simply overwhelming. Defendant was captured on Title III wiretaps, overheard talking without inhibition about drug trafficking, he was caught on videotape and audiotape engaged in consensually recorded drug deals, and he testified himself and further hurt his case by lying repeatedly. His lies - such as the one that he was supplied by a "Chava" other than Salvador Rosales who was actually in jail for much of the time that defendant claimed to be interacting with him - were his own, not his lawyer's.

In sum, defendant's motion for new counsel was untimely, and is seen by this Court for what it was - an attempt to delay the inevitable.

## II. <u>Count I Verdict Was Not "Impossible"</u>

Defendant next claims that the verdict on Count One should be set aside because the indictment charges that Gaya conspired with others from 2000 to 2006, and Gaya was in jail from 2000 to 2002. Therefore, defendant claims that "the allegations in Count One are blatantly improper."

We disagree. The government is not put to the burden of proving that defendant conspired with others for every day from 2000 to 2006. A Seventh Circuit pattern jury instruction makes this clear. Instruction 5.08 states, in part, that "[t]o be a member of the conspiracy, the defendant need not join at the beginning ... " Therefore, we deny defendant's request that the verdict on Count One be set aside.

## III. <u>The Evidence Sufficiently Established That Gaya And Rosales Conspired</u>

Motions for acquittal should be granted only when "the evidence is insufficient to sustain

a conviction." Fed.R.Crim.P. 29(a). The defendant "faces a nearly insurmountable hurdle [because] .... we consider the evidence in the light most favorable to the Government, defer to the credibility determination of the jury, and overturn a verdict only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt." *United States v. Moore*, 115 F.3d 1348, 1363 (7th Cir.1997) (quotation omitted).

In this case, defendant has fallen short of meeting that burden. Instead, he has simply recast his closing argument that "Chava" was someone other than Rosales and that witness Jesse Guajardo's testimony was incredible. However, the jury rejected all of those arguments, and this Court should do the same here.

There was abundant evidence of the defendants' conspiratorial relationship. The government's theory of the case was that Gaya received cocaine on a regular basis from Salvador Rosales, who admitted that his nickname was "Chava." Gaya admitted all of this in recorded conversations, and also admitted that he was fronted cocaine regularly by Rosales. The government put on substantial evidence that others, including Jesse Guajardo and, on one occasion, ATF agents, witnessed Rosales supply Gaya with cocaine on credit. The government also completely discredited Gaya's claim that another "Chava" supplied him with cocaine and collected money from him for the cocaine - that other "Chava" was in jail during the times Gaya claimed to have received cocaine from him (but Rosales was not). In any event, the jury could have discredited Guajardo's testimony or any of the other evidence at trial. It chose not to. Therefore, we find that there is no basis for disturbing the jury's verdict.

## CONCLUSION

For the foregoing reasons, the motion of defendant Jose Gaya for judgment of acquittal or a new trial [#165] is denied.

It is so ordered.

_____
Wayne R. Andersen
United States District Court

Dated:   June 9, 2009